MURRY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-398-CR

PATRICK WILLIAM MURRY, APPELLANT

A/K/A PATRICK MURRY

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Patrick William Murry appeals from his conviction by a jury of the offense of burglary of a habitation with the intent to commit assault.  The jury assessed appellant’s punishment at nine years’ confinement.  In his sole point on appeal, appellant complains that the evidence is factually insufficient to support the appellant’s conviction.  We affirm the trial court’s judgment.

FACTUAL BACKGROUND

Appellant is the father of Jandell Echols’s daughter Kalia Murry, who was ten months old at the time of the offense.  Jandell and Kalia lived with Jandell’s mother, Deborah Nickerson.  Appellant and Jandell began dating in February 2001 and continued to be romantically involved on and off again until they broke up in June 2002.  Jandell lived with appellant in an apartment from March through June 2002, but her primary residence was her mother’s home.  However, Jandell’s relationship with her mother has at times been strained because  Nickerson disapproves of Jandell’s relationship with appellant. 

Although appellant knew that Nickerson disapproved, prior to June 24, 2002, appellant often went to see Kalia at Nickerson’s house.  Appellant usually arrived for visitation sometime after 7:00 a.m. on weekdays because he knew that Nickerson left for work at approximately 6:45 a.m. every morning.  Appellant testified that he went to Nickerson’s home the morning of June 24, 2002, upon Jandell’s invitation.  Jandell admits that she and appellant argued on the phone the night before, but she denied inviting appellant to the house.  Nickerson never consented to appellant’s entry into her house.

When appellant arrived at Nickerson’s house at approximately 7:00 a.m. on June 24, 2002, he knocked on the door, but received no answer.  Jandell and Kalia were asleep in Tristan’s room near the front of the house.  Tristan is Jandell’s sister who also lived there.  In response to the knocking on the front door, Tristan went to the door, looked through the peephole, and saw appellant standing outside.  Tristan returned to the bedroom and told Jandell that it was appellant.  Jandell instructed her not to let him in. 

Appellant then went to Tristan’s  window at the front of the house and knocked on it demanding that he be let in.  The sisters continued to ignore appellant’s demands to let him in, so he went to the back bedroom window where Jandell usually slept and began banging on it.  Tristan and Jandell both testified that in addition to demanding  entry, appellant also threatened to beat up Jandell.  Appellant denied that he made any threats at this time.

Frustrated by the sisters’ nonresponsiveness, appellant finally lost his temper and threw a brick through the back bedroom window, breaking it.  Still in the front bedroom, the sisters heard the crash from the broken window and ran toward the front door. 

The testimony conflicts as to whether appellant actually entered the house through the back window or ran around the house to the front yard. Tristan  testified that her sister, carrying her baby, ran to the front door ahead of her.  As Tristan reached the front door, she looked back toward the back bedroom and saw appellant climbing through the window.  She asked him what he was doing there.  In response, appellant demanded to know where Jandell was and threatened to assault Jandell.

Jandell’s testimony corroborated her sister’s account of what happened. Jandell testified that although she did not actually see the appellant climb through the window into the house, she heard him come through the window. Jandell further testified that in addition to being told by her sister that appellant was inside the house, she also saw appellant in the house shortly after he climbed through. 

Appellant admitted that he broke the bedroom window, but denies he entered the home, or put any part of his body through the window.  According to appellant, after breaking the window, he saw the sisters run toward the front door, so he ran out the side yard to catch up with Jandell in the street. 

Once in the street, appellant grabbed Jandell by the hair, and she fell or was thrown down onto the ground.  Appellant grabbed the baby and began kicking and throwing Jandell’s head against the concrete.  When neighbors began gathering at the scene, appellant stopped the assault, put the baby inside the front door of the house, and ran away. 

Davette Jackson, a neighbor, testified that Tristan ran to her house to get help.  When Jackson went outside, she saw appellant beating Jandell’s head against the concrete.  Jackson did not see appellant enter or leave the home. Similarly, another neighbor, April Diaz, looked out her bedroom window and saw appellant jumping up and down on Jandell’s head.  Like Jackson, Diaz did not see appellant enter or leave the house prior to the assault.

The police arrived on the scene shortly after the assault.  Officer J.D. Hopper of the Fort Worth Police Department testified to what he saw at the scene and inside the home.  He stated that he saw that the back bedroom window was knocked out and that glass was lying on the floor inside the window.  Officer Hopper noted that the location of the glass was consistent with the window being broken “in” instead of someone going “out” through it.  He also saw that the furniture in front of the window was knocked down.  A few hours later, Officer Hopper located appellant and took him into custody.  Once in custody, appellant admitted to committing the assault and explained that he had been to the house to see his daughter.  He stated that he had never entered the house prior to putting the baby inside the front door. 

At trial, the jury found appellant guilty of the offense of burglary of a habitation with the intent to commit assault.

STANDARD OF REVIEW

Appellant’s sole point on appeal complains that the evidence is factually insufficient to support his conviction.  
In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

DISCUSSION

Appellant complains that 
the evidence is factually insufficient to support his conviction because 
the State failed to show that he actually entered the home on June 24, 2002.  A conviction for burglary with intent to commit assault requires a showing of entry into a habitation, building, or part of a building not open to the public, without the effective consent of the owner, with the intent to commit a felony, theft, or assault. 
 Tex. Penal Code Ann.
 § 30.02(a) (Vernon 2003).  For the purposes of penal code section 30.02, "enter" means to intrude any part of the body or any physical object connected with the body.
  
Id. 
§ 30.02(b).  Appellant says there was no entry.

Appellant admits knocking out the bedroom window with a brick and assaulting Jandell; however, he denies entering the house prior to the assault.  
Thus, appellant contends that he is only guilty of assault and that his burglary conviction cannot stand. 

Appellant points out that no witnesses at the scene were able to say whether appellant came from inside the house except for Tristan, who testified that appellant entered the home prior to placing the baby inside the front door.  Appellant states that his version of events never wavered and that his testimony so outweighs the testimony of Tristan and Jandell as to undermine confidence in the 
verdict or the proof of guilt.
 

Contrary to appellant’s assertions, ample evidence exists to support the burglary conviction.  Appellant incorrectly states that Jandell’s testimony was based solely upon Tristan’s hearsay statements.
(footnote: 2)  
However, appellant ignores part of Jandell’s testimony where she stated that she actually saw appellant inside the house before she ran out the front door, even though she did not see him come in. 
 Jandell’s testimony is corroborated by Tristan’s testimony.  However, the only corroborating evidence that appellant points to is Officer Hopper’s testimony that appellant denied entering the house prior to the assault.  Even so, Officer Hopper could only testify as to appellant’s statements and not from any personal observation.

Officer Hopper’s testimony actually provides evidence of physical entry into the home.  While at the home, he observed that the broken glass
 from the bedroom window was consistent with being broken in when someone climbed in through it. 
 Additionally, he noted that furniture in the room was knocked over.  
Appellant testified that the window broke, and the large shelf sitting in front of the window fell over when he threw the brick through the window. 

After a neutral review
 of all the evidence, we can say that it was not so weak that it would undermine the confidence in the verdict.
(footnote: 3)
 In conclusion, we hold that the evidence in this case is factually sufficient to support a finding that appellant entered the house prior to committing the assault and did so with the intent to commit assault.  Accordingly, we overrule appellant’s sole issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: LIVINGSTON, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 2, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
At trial, Jandell testified that her sister told her that appellant came into the bedroom through the window.  Appellant did not object to this testimony as hearsay.  Hearsay evidence admitted without objection has probative value as substantive evidence.  
Fernandez v. State
, 805 S.W.2d 451, 455-56 (Tex. Crim. App. 1991).

3:
The truthfulness of Jandell’s testimony is supported by the fact that she and appellant had reconciled prior to trial and did not want to see him punished in any way.  Jandell attempted to drop the pending charges in the case and ultimately had to be subpoenaed to testify.  Also of note was the fact that the State impeached appellant with multiple prior felony convictions.